UNITED STATES OF AMERICA,

VERSUS

JONATHAN AYALA AND EDWIN HERNANDEZ,

Defendants.
———————————

№ 12-CR-317 (JFB)
———————————

UNITED STATES OF AMERICA,

VERSUS

ANGEL VASQUEZ,

Defendant.
———————————

**MEMORANDUM AND ORDER**
December 10, 2014
———————————

JOSEPH F. BIANCO, District Judge:

Jonathan Ayala ("Ayala") and Angel Vasquez ("Vasquez") are charged with racketeering, racketeering conspiracy, murder in aid of racketeering, conspiracy to commit murder in aid of racketeering, and other related offenses, as alleged members of the street gang La Mara Salvatrucha, also known as MS-13 ("MS-13"). Edwin Hernandez ("Hernandez") has been charged with two counts of attempted murder in aid of racketeering, as well as related offenses, also as an alleged member of MS-13. The trial of these defendants (collectively, the "Trial Group II defendants") is scheduled to commence on January 20, 2015.[1]

---

[1] Ayala and Hernandez are charged by superseding indictment S-4 in case number 12-CR-63. Vasquez is charged by superseding indictment S-2 in case number 12-CR-317. In an oral ruling on February 12, 2014, the Court granted the government's motion to

1

On July 17, 2014, Ayala filed the present motion for a change of venue pursuant to Federal Rule of Criminal Procedure 21(a), contending that the negative media coverage of MS-13 has pervaded the communities in Nassau and Suffolk Counties to such an extent that he cannot obtain a fair trial here. According to Ayala's counsel, "[c]ounsel for the remaining Trial Group II defendants join in this motion." (Grossman Decl. ¶ 7.) The government filed its opposition to the motion on August 14, 2014. The Court has fully considered the submissions of the parties and, for the reasons discussed *infra*, denies the motion.

I. FACTUAL BACKGROUND

In support of his motion, Ayala has submitted fourteen exhibits of press releases and news articles concerning MS-13, and has also cited a 2011 radio segment about MS-13 on Long Island.

Many of the exhibits are news articles published from 2011 to 2014 in *Newsday*, the *TimesLedger*, and the *Conservative Crusader* website summarizing the substance of indictments, guilty pleas, trial testimony, convictions, and sentencing hearings of accused MS-13 members other than the Trial Group II defendants. (*See* Exs. 1, 3–9, 13.) Only one news article, appearing in *Newsday* on September 21, 2012, mentions Hernandez—specifically, that article lists Hernandez's name as one of five defendants added to an indictment. (*See* Ex. 4.) Three more exhibits are a series of news articles focusing on the addition of Juan Elias Garcia to the FBI's "Ten Most Wanted" list, Garcia's arrest in Nicaragua, and his subsequent arraignment in this Court. (*See* Exs. 11–13.) All of these articles are mostly neutral reports of the criminal proceedings of individuals other than the Trial Group II defendants. However, Ayala objects to several quotations about MS-13 attributed to United States Attorney Loretta E. Lynch. In particular, these articles quote U.S. Attorney Lynch as stating that "members of the MS-13 street gang have terrorized communities across Long Island" (Ex. 4), referencing "the heartless nature of this criminal enterprise known as MS-13" (Ex. 6) and "MS-13's dedication to violence" (Ex. 7), and describing MS-13 as a "killing machine" (Ex. 8) and an "international killing machine" (Exs. 11–12).

Two of the exhibits are FBI press releases announcing the guilty pleas of two MS-13 members other than the Trial Group II defendants. (*See* Exs. 2, 10.) Ayala objects to several statements made by U.S. Attorney Lynch and other government agents. In the first, dated June 15, 2011, U.S. Attorney Lynch referred to the crimes as "senseless gang violence." (Ex. 2.) In the second, dated January 14, 2014, U.S. Attorney Lynch referred to the "violent lifestyle" of MS-13 members, and FBI Assistant Director George Venizelos promised to "dismantle MS-13." (Ex. 10.)

Finally, the radio segment and one *Newsday* article describe MS-13 on Long Island without reference to a particular criminal case. The radio segment, which aired on WNYC on December 20, 2011, profiled MS-13's presence on Long Island and referred to MS-13 as "the baddest gang on Long Island" and the "most dangerous gang in the U.S.," which is "notorious for brutal slayings." (*See Authorities Make Strides Against MS-13, Long Island's 'Baddest' Gang*, WNYC (Dec. 20, 2011), http://www.wnyc.org/story/176541-mara-salvatrucha/.) The *Newsday* article features

---

join these defendants for trial. However, on consent of both Vasquez and the government, Vasquez has now been severed from the other defendants, and will have a separate trial.

gang violence by "the Crips, Bloods, and MS-13" on Long Island, and reports that "federal officials" have identified MS-13 as "a national security threat." (Ex. 14.)

II. LEGAL STANDARD

A. The Constitutional Standard

"The Sixth Amendment secures to criminal defendants the right to a trial by an impartial jury." *Skilling v. United States*, 561 U.S. 358, 377 (2010); *see* U.S. Const. amend. VI. Although the Constitution provides that criminal trials shall be held in the state and district where the crimes were committed, *see* U.S. Const. art. III, § 2, cl. 3 & amend. VI, "[t]he Constitution's place-of-trial prescriptions . . . do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial—a 'basic requirement of due process.'" *Skilling*, 561 U.S. at 378 (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).

Where a defendant raises a constitutional challenge to the venue of his trial before jury selection, he "must make a showing of presumed prejudice, arising when 'prejudicial publicity so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community.'" *United States v. Volpe*, 42 F. Supp. 2d 204, 216 (E.D.N.Y. 1999) (quoting *Mayola v. Alabama*, 623 F.2d 992, 997 (5th Cir. 1980)). For instance, in *Rideau v. Louisiana*, the defendant's taped confession to murder, kidnapping, and armed robbery was broadcast three times to audiences of 24,000 to 53,000 people. 373 U.S. 723, 724–25 (1963). The entire parish in which the defendant was tried contained approximately 150,000 people. *Id.* at 724. In these circumstances, the Supreme Court held that the defendant's motion for change of venue should have been granted even before jury selection because "[a]ny subsequent court proceedings in a community so pervasively exposed to such a spectacle [of a publicized confession] could be but a hollow formality." *Id.* at 726.

"A presumption of prejudice, [the Supreme Court's] decisions indicate, attends only the extreme case," such as *Rideau*, where the "trial atmosphere . . . was utterly corrupted by press coverage." *Skilling*, 561 U.S. at 380–81 (internal quotation marks, citations, and brackets omitted); *see also United States v. Sabhnani*, 599 F.3d 215, 233 (2d Cir. 2010) (noting that cases where adverse pretrial publicity warrants a presumption of prejudice "are very rare, however, and have been characterized . . . as 'extreme situation[s]'" (quoting *United States v. Campa*, 459 F.3d 1121, 1143 (11th Cir. 2006) (en banc))). In most cases, "pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976). "Qualified jurors need not . . . be totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 799–800 (1975); *see also Skilling*, 561 U.S. at 360 (holding that "juror *impartiality* does not require *ignorance*" (emphasis in original)). Indeed, among Supreme Court decisions, *Rideau* stands alone as the only one in which the Supreme Court has "found presumptive prejudice deriving solely from pretrial publicity." *Volpe*, 42 F. Supp. 2d at 216.

B. Federal Rule of Criminal Procedure 21(a)

"Upon the defendant's motion," Federal Rule of Criminal Procedure 21(a) also requires the transfer of "the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant

3

cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). "Substantial publicity alone is not enough to require a change of venue." *United States v. Stevens*, 83 F.3d 60, 66 (2d Cir. 1996). Instead, "[i]n order to prevail on a motion under Rule 21(a), the defendant must show 'a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial.'" *United States v. Maldonado-Rivera*, 922 F.2d 934, 966–67 (2d Cir. 1990) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966)); *see also Sabhnani*, 599 F.3d at 232. Factors for a court to consider in making this decision include "the extent to which the government is responsible for generating the publicity, the extent to which the publicity focuses on the crime rather than on the individual defendants charged with it, and other factors reflecting on the likely effect of the publicity on the ability of potential jurors in the district to hear the evidence impartially." *Maldonado-Rivera*, 922 F.2d at 967. "A defendant making a pre-voir dire motion to change venue is faced with a difficult burden of showing that the nature of adverse pretrial publicity is such that makes a fair trial unlikely, and thus, inherent prejudice must be presumed." *United States v. Salim*, 151 F. Supp. 2d 281, 282 (S.D.N.Y. 2001).[2] Finally, "[t]he ultimate determination of whether unfavorable publicity renders a fair trial unlikely is committed to the district court's discretion . . . ." *Maldonado-Rivera*, 922 F.2d at 967; *see also Skilling*, 561 U.S. at 378 n.11 (noting that, under Rule 21(a), "district-court calls on the necessity of transfer are granted a healthy measure of appellate-court respect").

### III. APPLICATION

Although Ayala moves for a change of venue only under Rule 21, the Court has considered his motion under the constitutional standard, as well. Neither the Constitution nor Rule 21(a) requires a change of venue in this case.

Most importantly, the vast majority of the press coverage submitted by Ayala does not reference the Trial Group II defendants. Only one news article mentions Hernandez's name—including it as part of a list of defendants under indictment (*see* Ex. 4)—and that article was "factual rather than inflammatory." *Salim*, 151 F. Supp. 2d at 283. The focus on MS-13, more generally, as opposed to the Trial Group II defendants or the crimes that they are accused of having committed, weighs heavily against a change of venue. *See, e.g.*, *Maldonado-Rivera*, 922 F.2d at 967 (upholding denial of change of venue motion, and noting that the news articles at issue "tended to focus on the robbery itself and on Gerena and the Macheteros organization rather than on any of the defendants before the court"); *see also United States v. White*, No. 02-CR-1111 (KTD), 2003 WL 721567, at *4 (S.D.N.Y. Feb. 28, 2003) (denying change of venue motion where publicity focused on defendant's "membership in [the Police Survivor's Fund, Inc.] and the general negative media coverage of charities failing to provide help to the victims of the World Trade Center tragedy."). District courts in other circuits have held similarly that more general news articles on gang violence or a specific gang are not so prejudicial so as to require a change of venue before jury selection. *See, e.g.*, *United States v. Burnett*, No. 09-4003-04CR-C-NKL, 2009 WL 2835751, at *7 (W.D. Mo. Aug. 31, 2009)

---

[2] By contrast, where a defendant moves for a change of venue during or after jury selection, a change of venue may be warranted if "answers provided in voir dire allow an inference that the panel of prospective jurors are actually prejudiced." *United States v. Livoti*, 8 F. Supp. 2d 246, 249 (S.D.N.Y. 1998).

4

(denying motion for change of venue on grounds that "the juror pool picked to decide [defendant's] case will have heard of the 'Cutthroat Gang' and defendant's association with the gang"); *United States v. Anderson*, No. 07 10143 01-JTM, 2008 WL 4078784, at *4–5 (D. Kan. Aug. 28, 2008) (denying motion for change of venue on basis of "frequent references to this prosecution or the 'Crips' gang generally" in local media); *United States v. Lane*, CRIM. 88-253 (JP), 1992 WL 315197, at *1–5 (D.P.R. Oct. 30, 1992) (denying motion for change of venue where defendant had submitted more than fifty-three newspaper articles and a videocassette of a television mini-series covering "Sonia Berrios' Gang," of which defendant was an alleged member).

Next, the Court concludes that any general comments about MS-13 made by U.S. Attorney Lynch or other government actors were not improper, nor were such comments so prejudicial as to warrant a change of venue. Other district courts have denied motions for a change of venue when faced with much more prejudicial statements made by a prosecutor on the case. *See United States v. Savage*, CRIM.A. 07-550-03, 2012 WL 2376680, at *2 n.4 (E.D. Pa. June 25, 2012) (denying motion for change of venue, even though U.S. Attorney had described the defendant "as the leader of perhaps the most violent drug gang even seen in Philadelphia"); *United States v. Walker*, 890 F. Supp. 954, 959 (D. Kan. 1995) (denying motion for change of venue, even though U.S. Attorney had described defendant as the leader of a Topeka street gang in a press release). Additionally, the comments at issue did not mention the Trial Group II defendants or even the crimes that they are accused of having committed. Accordingly, the government's general statements about MS-13 do not warrant a change of venue in this case. *See Maldonado-Rivera*, 922 F.2d at 967 (noting that, "though another government press release attributed certain other violent acts to Los Macheteros, this release described acts not at issue in the present prosecution and did not mention any of the present defendants").

Finally, the Court notes that the jury panel for this trial will be drawn "from the entire Eastern District of New York, which is comprised not only of Nassau and Suffolk Counties, but also of the boroughs of Brooklyn, Queens, and Staten Island." *United States v. Prado*, No. 10-CR-74 (JFB), 2011 WL 3472509, at *17 n.12 (E.D.N.Y. Aug. 5, 2011). As noted in *Prado*, "there are approximately eight million people residing in the Eastern District of New York," *id.* at *14, and the jury pool is "large and diverse," *id.* at *17 n.12. Given the size and diversity of the jury pool, the Court does not find it reasonably likely "'that prejudicial news prior to trial will prevent a fair trial.'" *Maldonado-Rivera*, 922 F.2d at 966–67 (quoting *Sheppard*, 384 U.S. at 363).

Instead, the Court concludes that the issue of potential prejudice from negative media coverage of MS-13 "is best determined during or after voir dire examinations." *Volpe*, 42 F. Supp. 2d at 218. "Many high profile cases have been tried in the Southern and Eastern Districts of New York, and courts have relied on 'thorough voir dire examinations . . . to produce unbiased juries.'" *United States v. Awadallah*, 457 F. Supp. 2d 246, 254 (S.D.N.Y. 2006) (quoting *Volpe*, 42 F. Supp. 2d at 218). This case is no different. Indeed, the Second Circuit has emphasized that "'the key to determining the appropriateness of a change of venue is a searching voir dire.'" *Sabhnani*, 599 F.3d at 234 (quoting *United States v. Yousef*, 327 F.3d 56, 155 (2d Cir. 2003)). During and after voir dire, of course, the Trial Group II defendants retain the right

5

to raise a challenge of actual bias. *Cf. Stevens*, 83 F.3d at 66 ("Of course, even if the media coverage was not unusually harmful, Stevens might have had a right to a change of venue had he been able to show that the impanelled jury was in fact impermissibly biased.").

### III. CONCLUSION

In sum, for the reasons discussed herein, the Trial Group II defendants' motion for a change of venue is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 10, 2014
       Central Islip, NY

\* \* \*

The United States is represented by Loretta E. Lynch, United States Attorney, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201, by John J. Durham and Raymond A. Tierney, Assistant United States Attorneys. Defendant Ayala is represented by Stuart J. Grossman, 108-18 Queens Boulevard, Forest Hills, New York 11375. Defendant Hernandez is represented by Murray E. Singer, 14 Vanderventer Avenue, Suite 212, Port Washington, New York 11050. Defendant Vasquez is represented by Kevin J. Keating, 666 Old Country Road, Garden City, New York 11530.